**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3735
_____

TAN CHEN,
                            Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A089-252-651)
Immigration Judge:  Honorable Susan G. Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 21, 2011

Before:  AMBRO, GREENAWAY, JR. and GREENBERG, Circuit Judges

(Opinion filed July 26, 2011 )
_____

OPINION
_____

PER CURIAM

        Tan Chen seeks review of the Board of Immigration Appeals' ("BIA" or "Board")

final order of removal.  In its order, the BIA affirmed the Immigration Judge's ("IJ")

decision to deny Chen's application for asylum, withholding of removal, and protection

under the Convention Against Torture ("CAT").  We will deny the petition.

## I.

Chen, a native and citizen of China, was served with a Notice to Appear in January 2008, charging him with removability pursuant to section 212(a)(6)(A) of the Immigration and Nationality Act ("INA"), as an alien present in the United States without being admitted or paroled.  Chen conceded removability and applied for asylum, withholding of removal, and CAT relief, claiming that he experienced past persecution and fears future persecution by corrupt officials and subordinates in the village where he lived.

At his administrative hearing, Chen testified before the IJ that he began to experience problems in 2002 when his village chief came to his family's home and proposed an arranged marriage between his son and Chen's younger sister.  Chen testified that the chief sought to benefit from Chen's father's ownership in a steel factory.  Chen claimed that after his father and sister rejected the proposal, village cadres returned to their home and took his sister back to the village chief's home, but that he and his family helped her escape.[1]  Chen claimed that between 2002 and 2006, he and his family members had occasional run-ins with the village chief, mostly related to the situation with his sister.

However, Chen testified his problems became more severe in 2006.  Apparently, the government wanted to build a highway in the village that would pass through Chen's

family home. Although Chen's family was told that they would be fairly compensated, Chen claimed that the village chief refused to adequately compensate his father and their neighbors. Chen testified that after his father filed two complaints against the village chief, cadres came to their home to confront his father; when he attempted to protect his father, he was pushed to the ground and hit on his torso and back. After that incident, Chen's parents told him to run away. Chen spent a brief time in another village with relatives, but left the country soon after. Chen believes that the village chief will exact revenge on him if he is returned to China.

The IJ denied Chen's applications for asylum and related relief. She found that although Chen testified credibly, he did not demonstrate that he suffered harm rising to the level of persecution in China, or that he had a well-founded fear of future persecution in China, on account of a protected ground.

First, although Chen had claimed membership in a particular social group, namely "landowners deprived of their land without fair compensation," the IJ concluded that, as a matter of law, he was not a member of a social group.

The IJ also rejected Chen's argument that he had been persecuted on account of his political opinion. Chen had claimed that he experienced retaliation after his father filed formal complaints against the village chief. The IJ noted that it was possible that such activity, if it constituted "whistle-blower activity," might form the basis of persecution on account of political opinion. See Cao v. Att'y Gen., 407 F.3d 146, 153

---

[1] Chen's sister later immigrated to Argentina and was granted asylum.

(3d Cir. 2005).  The IJ, relying on <u>Matter of C-A</u>, 23 I. & N. Dec. 951 (BIA 2006), noted that whistle-blower activity must be performed out of a sense of civic duty or moral responsibility, not simply for compensation.  The IJ determined that Chen and his family sought legal action against the village chief for compensatory reasons, not out of civic responsibility.

Moreover, even if Chen and his family had been targeted for fighting corruption, the IJ found that Chen failed to establish that it was anything more than a tangential reason.  According to the IJ, the primary reason the village chief targeted Chen and his family was to gain control of the steel mill, especially in light of the village chief's marriage proposal scheme.

In an alternative finding, the IJ found that, even if Chen established a nexus between his claim of persecution and a protected ground, he did not suffer harm rising to the level of persecution.  The IJ cited the fact that Chen was subjected to an isolated incident of physical abuse, which did not result in serious injury, stemming from his attempt to stop village officials from arresting his father.

As to Chen's claimed well-founded fear of future persecution, the IJ found that he failed to establish an objectively reasonable fear of future persecution and noted that internal relocation was a reasonable possibility.  The IJ further reasoned that Chen failed to present any documentation that would establish that individuals in China would be interested in him upon his return to the country.  Lastly, the IJ concluded that Chen failed to demonstrate that he would likely be tortured if removed to China.  Chen appealed and,

4

in an August 2010 decision, the BIA dismissed the appeal. Chen filed a timely petition for review.

## II.

This Court has authority to review final orders of removal. See 8 U.S.C. § 1252(a). "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review a agency's factual determinations for substantial evidence, and will uphold such determinations "unless the evidence not only supports a contrary conclusion, but compels it." Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005) (internal citations omitted). Thus, if the applicant "seeks to obtain judicial reversal of the [denial of asylum], he must show that the evidence he presented was so compelling that no reasonable fact finder could fail to find" the requisite likelihood of persecution. INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

To be granted asylum as a refugee, an applicant must establish that he is unable to return to his homeland "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." See INA § 101(a)(42). An applicant who offers credible testimony regarding past persecution is presumed to have a well-founded fear of future persecution. Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir. 2004) (citation omitted).

5

## III.

On petition for review, Chen argues that his testimony established eligibility for asylum based on past persecution on account of his political opinion, as well as his membership in a social group. See Petitioner's Brief ("Pet. Br.") at 12. He further argues that his testimony and the evidence of record establish that he has a well-founded fear of future persecution on account of his political opinion, as well as his membership in a social group. Id.

In his appeal to the BIA, Chen argued that the IJ erred in concluding that his proposed social group of "landowners deprived of their land without fair compensation" is not a congnizable social group. (See Administrative Record ("A.R.") at 46-47.) However, in his opening brief here, Chen abandons that argument and instead asserts that the IJ and BIA both erred in classifying his articulated social group as "landowners deprived of their land without fair compensation" rather than his "immediate family." See Pet. Br. at 15. Chen did not raise that argument on appeal to the BIA, however. Therefore, because Chen failed to administratively exhaust the argument, we lack jurisdiction to review it. See INA § 242(d)(1); Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003).

We also determine that Chen has waived review of the agency's determination that he was unable to establish that he was a member of a cognizable social group, namely "landowners deprived of their land without fair compensation." See Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived

unless a party raises it in its opening brief [. . .]") (internal quotation marks and citation omitted). Accordingly, his broader argument that the IJ and BIA erred in concluding that he did not demonstrate past persecution, or a likelihood of future persecution, on account of his membership in a social group, necessarily fails.

Next, Chen argues that he established before the IJ that he was persecuted in the past, and would be persecuted in the future, on account of his political opinion. Specifically, Chen argues that he and his father were retaliated against for their opposition to the actions of the village chief, which the IJ and BIA interpreted as a whistle-blower claim.[2] Specifically, Chen claimed that after his father filed a second formal complaint against the chief, village cadres came to the family home to arrest his father. Chen claimed that, when he attempted to prevent his father's arrest, he was thrown to the ground by the cadres.

As mentioned, the IJ and BIA determined that Chen was unable to establish that his activity constituted whistle-blowing. However, even assuming that it did, the IJ and BIA concluded that Chen was unable to demonstrate that any treatment that he endured at the hands of the village chief or his followers rose to the level of persecution, or that he has a well-founded fear of future persecution.

Because substantial evidence supports the agency's finding that Chen was unable to demonstrate either past persecution or a well-founded fear of future persecution, we

_____

[2] Chen did not object to that characterization in his appeal to do the BIA, nor does he here.

7

need not review its additional whistle-blower determination.

Chen claimed to have suffered only one minor injury stemming from his coming to his father's defense when village cadres attempted to arrest his father. This Court has held that a single alleged beating that does not result in any injuries requiring medical attention does not constitute past persecution. See Chen v. Ashcroft, 381 F.3d 221, 235 (3d Cir. 2004).

Substantial evidence also supports the finding that Chen does not have a well-founded fear of future persecution. See Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 351 (3d Cir. 2006) (to establish a well-founded fear of future persecution, an applicant must show both a subjectively genuine fear of persecution and an objectively reasonable possibility of persecution). Although Chen testified that Chinese officials would be aware of his return to the country, he did not present any evidence to demonstrate that this is the case.

In a letter provided by Chen's father in support of Chen's application, Chen's father explained that after his son fled the country, he was detained and later released, but that he suffered only a minor injury to his waist during that incident. Chen did not provide any letters from neighbors describing any ongoing persecution that they have suffered in the years since Chen fled China. As Chen's claim is largely based on incidents involving his family and neighbors, the fact that they remain in China without apparent difficulty undermines his assertion that he fears persecution if removed to

China.  See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) ("We agree that when family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished.").

Moreover, as the IJ found, Chen's claimed well-founded fear is also undermined by the fact that he could safely relocate within China.  See 8 C.F.R. § 1208.13(b)(2)(ii).  Chen has not presented any evidence or convincing arguments contradicting that finding.

Because Chen did not meet his burden of proof as to his asylum claim, his claim for withholding of removal necessarily fails, as does his claim for protection under the CAT.  See Yu v. Att'y Gen., 513 F. 3d 346, 349 (3d Cir. 2008).  Accordingly, we will deny the petition for review.